**NOT FOR PUBLICATION**                                              **CLOSED**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLORIA ELLERBEE, | Civil Action No.: 10-cv-1551 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, District Judge.

Presently before the Court is Plaintiff Gloria Ellerbee's Complaint seeking review of a final determination by the Administrative Law Judge Dennis O'Leary ("ALJ"). The Court has considered the submissions made in support of and in opposition to, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, this Court finds that the ALJ's decision is supported by substantial evidence and is hereby affirmed.

**I.    FACTS AND PROCEDURAL HISTORY**

On August 1, 2006, Plaintiff filed a Title II application for Social Security Disability Insurance Benefits and a Title XVI application for Supplemental Security Income, alleging disability as of July 27, 2006. These claims were denied initially and upon reconsideration. At Plaintiff's request, a hearing was then held before the ALJ on April 6, 2009. The ALJ found Plaintiff not to be disabled under §§ 216(i) and 223(d) of the Social Security Act, and Plaintiff has subsequently appealed this decision.

At the time of the hearing, Plaintiff was fifty-four (54) years old with a high school education. (R. at 21.) Plaintiff worked in the restaurant industry as a cashier and dietary worker up until July 2006, at which point she was laid off for excessive tardiness and absenteeism. (See Id. at 22-25, 31.) Her job required a combination of walking and standing for up to seven and a half hour a day, and lifting and carrying up to fifty pounds of weight. (Id. at 15, 29.) She has not been employed since. (Id. at 24.) Plaintiff is financially supported by her family, and lives in a house with her mother. (Id. at 31.)

The record indicates that Plaintiff suffers from HIV, non-insulin dependent diabetes mellitus, and hypertension. (Id. at 11, 23, 28.) Plaintiff claims that she experiences tiredness, difficulty breathing, and weakness in her left leg. (See Id. at 25, 28.) She also suffers from depression, but has not seen a psychiatrist. (Id. at 29-30.) Plaintiff takes an oral medication for her diabetes, but alleges that she is unable to take her HIV medication because it makes her ill. (Id. at 26.) Plaintiff uses heroin, and is able to wash and clean her mother's house on a daily basis. (Id. at 31.)

On November 21, 2006, Plaintiff was given an internal consultative examination by a Dr. Patel. (Id. at 211.) Dr. Patel determined that Plaintiff was HIV positive, had a history of substance abuse, hypertension, atypical chest pain, possible arthritis of the lumbar spine, and a refraction error. (Id. at 212.) Dr. Patel opined that Plaintiff had normal grip and movement in both hands, no gross neurological defects, and could walk without using a walking device. (Id.) On January 26, 2007, Plaintiff arrived at Beth Israel Medical Center emergency room reporting pain, swelling and sores on her legs. (Id. at 228.) Plaintiff was later discharged after her condition was diagnosed as stable. (Id. at 232, 235.) On January 28, 2007, two days later, Plaintiff was given a follow up evaluation at the hospital, which revealed significant

improvement in her condition. (See Id. at 240.)

On February 21, 2007, Plaintiff returned to Beth Israel Medical Center complaining of shortness of breath and an unusual burning sensation all over her body. (Id. at 243.) Plaintiff admitted that she had used heroin that morning. (Id.) She was then treated with an allergy medication and left the hospital without being officially discharged by a doctor. (Id. at 245-46.)

In May 2007, Plaintiff was treated by a Dr. Khan after complaining of dizziness and leg pain. (Id. at 263.) On May 23, 2007, Dr. Khan diagnosed Plaintiff with neuropathy, prescribed the medication Lyrica, and referred Plaintiff for a NCS/EMG study. (Id.) Plaintiff never underwent the recommended diagnostic test. (See Id. at 29.) At the time of the hearing, Plaintiff reported that her leg swelling was completely alleviated. (Id. at 36.)

## II. LEGAL STANDARD

### A. Determining Disability

Under the Social Security Act, a claimant must demonstrate that he or she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has developed a five-step process to evaluate the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. At step one, the plaintiff must establish that he is not currently engaging in substantial gainful activity. Id. at §

404.1520(a)(4)(i).  If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied.  Id.; see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987)).  If the plaintiff is not working, he must establish at step two that he suffers from a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the plaintiff fails to demonstrate a severe impairment, the ALJ must deny disability benefits.  Id.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpt. P, Appendix 1.  Id. at 404.1520(a)(4)(iii); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  If it does, the plaintiff is automatically disabled.  20 C.F.R. § 404.1520(d).  In determining whether the plaintiff's impairments meet or equal any of the listed impairments, the ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning.  See Burnett, 220 F.3d at 119-20.  Conclusory statements at this step of the analysis are inadequate and render the decision "beyond meaningful judicial review."  Id. at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four, where he considers whether the plaintiff "can still do [his or her] past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv).  "This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work."  Burnett, 220 F.3d at 120.

The plaintiff "bears the burden of proof for steps one, two and four of [the five-step] test." Sykes, 228 F.3d at 263. Neither side bears the burden of proof in step three because "step three involves a conclusive presumption based on the listings." Id. at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5).

If the plaintiff cannot perform the past work, the analysis proceeds to step five. In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform. 20 C.F.R. §404.1520(a)(4)(v); see also Sykes, 228 F.3d at 263. In determining whether employment exists in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education and work experience. 20 C.F.R. § 404, Subpt. P, App. 2.

However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments,[1] "the government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels." Sykes, 228 F.3d at 269-70. Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation. Id. at 273. If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled.

---

[1] Under the Code of Federal Regulations, impairments can be either exertional or non-exertional. Exertional impairments affect the plaintiff's "ability to meet the strength demands of jobs" in terms of "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a. All other impairments are considered non-exertional. Id.; see also Sykes, 228 F.3d at 263.

**B. Standard of Review**

"Substantial evidence" is the standard of proof in disability insurance benefit cases. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). The court has a duty to review the evidence in its totality and decide whether the ALJ's determination was reasonable. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). The court gives deference to the administrative findings and decision, but it must also "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantially supported by the evidence. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). The court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Sullivan, 970 F.2d at 1182. To assist the court in this process, an ALJ must explain the rationale behind his decision, and, where there is conflicting medical evidence, must adequately explain in the record his reasons for rejecting competent evidence. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). An ALJ may reject testimony of subjective complaints where it is not consistent with the medical evidence. See, e.g., Burns v. Barnhart, 312 F.3d 113, 130-31 (3d Cir. 2002).

**III. DISCUSSION**

**A. Summary of the ALJ's Findings**

At step one, the ALJ determined that Plaintiff has not been engaged in substantial gainful employment since the onset of her alleged disability on July 27, 2006. (R. at 11.) At step two, the ALJ found that Plaintiff had the following severe impairments: HIV infection, non-insulin dependent diabetes mellitus and hypertension. (Id.) However, at step three, the ALJ found that

Plaintiff's impairments do not meet or medically equal any of the listed impairments. (Id. at 12.) The ALJ noted that the evidence does not sufficiently establish the existence of Neuropathy or Acidosis necessary to meet the listing for diabetes under section 9.08. (Id.) Furthermore, the ALJ found that Plaintiff's HIV and hypertension do not satisfy the requirements for the listings under sections 14.08 or 4.00. (Id.)

At step four, the ALJ found that Plaintiff had a RFC to perform a full range of light work. (Id.) In order to make this determination, the ALJ utilized a two step process. (Id.) First, the ALJ determined that the evidence displayed an underlying impairment that could reasonably be expected to produce Plaintiff's symptoms. (Id.) Once an underlying physical or mental impairment had been found, the ALJ then determined whether Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of her symptoms were substantiated by the record as a whole. (Id.) Based on the record as a whole, the ALJ found that Plaintiff's complaints were not credible. (Id. at 14.) The ALJ based this finding on the medical findings of Dr. Patel, the treatment records from Beth Israel Hospital, the assessment performed by the State Agency medical consultants, and the testimony from Plaintiff regarding her daily activities. (Id. at 15.) Additionally, the ALJ explained which evidence he did or did not give significant weight, and his reasons for doing so in his determination. (Id.)

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy, which Plaintiff can perform. (Id. at 15.) Thus, the ALJ determined that Plaintiff was not entitled to benefits. (Id.)

The Appeals Council denied Plaintiff's request to review the decision of the ALJ. (Id. at 2.) Plaintiff now appeals the ALJ's decision to this Court.

B. **Analysis**

Plaintiff argues that the ALJ's determination was not supported by substantial evidence from the record. Specifically, Plaintiff contends that the ALJ erred in three respects. First, Plaintiff argues that the ALJ did not properly evaluate whether a Plaintiff's severe impairments meet one of the listings at step three. Second, Plaintiff alleges that the ALJ did not sufficiently explain the reasoning behind his evaluation of Plaintiff's RFC at step four. Finally, Plaintiff argues that the ALJ should have utilized a vocational expert at step five to evaluate her alleged non-exertional limitation

*Step Three - Combination of Impairments*

The first issue before the Court is whether the ALJ's determination at step three is supported by substantial evidence. At step three, an ALJ must determine whether a plaintiff's impairment or combination of impairments is "medically equivalent" to an impairment in the listings. Volenti v. Comm'r of Soc. Sec. Admin., 373 Fed. Appx. 255, 257 (3d Cir. 2010). In making such a determination, an ALJ must give reasons for his decision and cannot merely state a conclusion without "identifying the listed impairments, discussing the evidence, or explaining his reasoning." Burnett, 220 F.3d at 119. Rather, an ALJ should give an analysis explaining whether and why a plaintiff's impairment, or those impairments combined, do not meet one of the listings. Id. at 120. However, an impairment must meet all of the medical criteria in order to meet one of the listed impairments. Volenti, 373 Fed. Appx. at 257. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)).

Plaintiff contends that there is substantial evidence on the record to show that her impairments meet the listings under section 14.08, and argues that the ALJ did not properly

evaluate her severe impairments. At step three, the ALJ found that Plaintiff's impairments did not completely satisfy the requirements in subsections A though K of section 14.08.[2] (R. at 12.) Furthermore, the ALJ later went on to state that "there is no evidence of opportunistic infections, muscle wasting, repeat emergency room visits or inpatient hospitalizations due to an exacerbation of her HIV symptoms." (Id. at 14.) Although Plaintiff alleges that the ALJ failed to combine and compare her impairments to meet listing 14.08, she does not present any evidence from the record that would establish this assertion, such as medical evidence that the ALJ failed to address, applicable medical listings the ALJ neglected to include in his opinion, or symptoms Plaintiff suffered that would combine to meet one of the listings. The ALJ identified the relevant listings, discussed the evidence, and explained the reasoning behind his determination. (See Id. at 12-14.)

Plaintiff also argues that the ALJ erred in his step three determination that Plaintiff does not suffer from a severe impairment involving neuropathy because it is contrary to the diagnosis made by Dr. Khan on May 23, 2007. However, the ALJ explained why he did not give this diagnosis significant weight in his decision, stating that it was based solely on Plaintiff's subjective complaints and was not substantiated by any diagnostic tests. (Id. at 11.) Additionally, the ALJ found the diagnosis to be inconsistent with Plaintiff's testimony regarding her daily activities and with the November 2006 consultative examination given by Dr. Patel, which did not indicate any significant restrictions. (Id.) In fact, the ALJ noted that Plaintiff testified during her oral hearing that she was never even diagnosed with neuropathy. (Id. at 30.)

Accordingly, this Court finds that the ALJ properly explained his determination at step

---

[2]Plaintiff asserts that the ALJ failed to evaluate the listings at 14.08L, M, and N. However, section 14.08 does not include such subsections and consists only of subsections A through K. See 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 14.08.

three and that it is supported by substantial evidence from the record.

*Step Four- RFC Determination*

Plaintiff argues that the ALJ's step four RFC determination is not supported by substantial evidence. At step four, an ALJ is required to determine the plaintiff's RFC , which is "defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121. The ALJ must consider all of the medical evidence in the record, weigh the credibility of the evidence, and give an explanation as to which evidence he rejects and his reasons for doing so. See Id. "Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him." Id. at 122. The ALJ may disregard a plaintiff's subjective complaints if they are inconsistent with the objective medical evidence, but must always explain why he has rejected a plaintiff's testimony. Id. The plaintiff bears the burden of proof at step four. Sykes, 228 F.3d at 263.

In the present case, Plaintiff argues that the ALJ did not explain how he came to a RFC capable of a full range of light work and that the determination is not supported by substantial evidence in the record. However, the ALJ's decision discusses all of the relevant medical evidence, and adequately explains the weight he gave to the different medical and non-medical evidence presented by Plaintiff. As discussed above, the ALJ rejected Dr. Khan's diagnosis of neuropathy because it was based solely on Plaintiff's subjective complaints, was not supported by any diagnostic tests, and was inconsistent with the other medical evidence as well as with Plaintiff's testimony during the oral hearing. (R. at 11, 14-15.) The ALJ noted that Plaintiff testified that she was able to clean and wash her mother's house on a daily basis, that she had gone to the hospital for three or four days to treat swelling in her legs, and that the swelling has since gone away. (Id. at 14.) Furthermore, the ALJ explained that Dr. Khan's diagnosis of

neuropathy was inconsistent with Dr. Patel's 2006 consultative evaluation, which did not show any gross neurological or sensory deficits in Plaintiff's legs. (Id. at 15.)

Although Plaintiff was subsequently diagnosed with acute cellulitis by Beth Israel Medical Center, treatment records and Plaintiff's own testimony indicate that this condition has resolved with antibiotic therapy. (Id.) Furthermore, the ALJ noted that Plaintiff's medical records show that her hypertension and diabetes can be adequately treated with medication. (Id.) Finally, the ALJ also relies on the State Agency's RFC assessment of capable to perform a full range of light work in making his determination. (Id.)

In light of the information stated above, the ALJ's determination of Plaintiff's RFC at step four is properly explained and based on substantial evidence from the record. Therefore, the Court affirms.

*Step Five- Vocational Expert*

Plaintiff argues that the ALJ should have used a vocational expert at step five to determine the availability of jobs in the national market because Plaintiff suffers from both exertional and non-exertional impairments. A non-exertional limitation is one that effects a plaintiff's "ability to meet the demands of jobs other than the strengths demands . . . ." C.F.R. § 404.1569 (c) (1). Some examples of non-exertional limitations include:

> (1) Difficulty functioning due to nervousness, anxiety or depression; (2) Difficulty maintaining attention or concentrating; (3) Difficulty understanding or remembering detailed instructions; (4) Difficulty seeing or hearing; (5) Difficulty tolerating a physical feature of the work; or (6) Difficulty performing some manipulative or postural form of the work, such as reaching, handling, stooping, climbing, crawling, or crouching.

Id. When a Plaintiff has severe exertional and non-exertional impairments, the ALJ may not rely solely on the grids to determine employment availability in the national economy. Sykes, 228 F.3d at 273. In making such a determination, the ALJ must utilize a "vocational expert or other similar

evidence." Id. Without utilizing vocational evidence, an ALJ cannot properly establish whether jobs exist in the national economy for a plaintiff with a combination of exertional and non-exertional impairments. Id.

Plaintiff asserts that a vocational expert was necessary to evaluate her alleged non-exertional impairments, including "a compromised immune system, diabetes with neuropathy, uncontrolled hypertension and kidney disease." (Pl. Br. at 17.) However, Plaintiff has not established how these allegations constitute severe non-exertional impairments that would require a vocational expert, and the ALJ properly evaluated each of the impairments to which Plaintiff refers. First, a compromised immune system is an inherent symptom for any person diagnosed with HIV, and, as discussed above, the ALJ properly found that Plaintiff's HIV infection does not meet or medically equal the listings under 14.08. (Id. at 12.) Furthermore, the ALJ addressed both Plaintiff's hypertension and kidney disease, finding that neither met or medically equaled a relevant listing, and there is no evidence in the record to establish that either caused Plaintiff any severe non-exertional limitations. (Id. at 12-13, 15.) Finally, the ALJ explicitly noted that the evidence fails to establish a severe impairment involving neuropathy. (Id. at 11.)

In the present case, the ALJ properly evaluated the evidence in the record and did not find any severe non-exertional impairments, which would require vocational evidence in the step five determination of job availability in the national economy. Accordingly, this Court finds that the ALJ's determination at step five is supported by substantial evidence in the record.

## IV.     CONCLUSION

In light of the forgoing, the Court finds that the ALJ's determination that Plaintiff is not disabled within the Social Security Act is supported by substantial evidence, and the decision of

the Commissioner is hereby affirmed.  An appropriate Order accompanies this Opinion.


DATED: April 21, 2011			/s/ Jose L. Linares
					JOSE L. LINARES
					UNITED STATES DISTRICT JUDGE